UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KUMANI KALEE REGAINS,<br>　　　　　Plaintiff,<br>v.<br><br>MARY KALAT,<br>　　　　　Defendant.<br>_____/ | Case No.: 23-11098<br><br>F. Kay Behm<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT (ECF No. 20)

### I.    PROCEDURAL HISTORY

Plaintiff Kumani Kalee Regains filed this *pro se* civil rights suit on May 9, 2023. (ECF No. 1). Defendant Mary Kalat filed a motion to dismiss and partial motion for summary judgment on December 8, 2023. (ECF No. 20). The motion is fully briefed. (ECF Nos. 23, 24). This matter has been referred to the undersigned for all pretrial matters. (ECF No. 14).

For the reasons below, the undersigned **RECOMMENDS** that the motion be granted.

### II.    BACKGROUND

Plaintiff Kumani K. Regains is an inmate at Jackson Cooper Street Facility ("Cooper Street") within the Michigan Department of Corrections ("MDOC").

(ECF No. 1, PageID.11). He was a library clerk along with R. Fox, another inmate at the Cooper Street law library, and Mary Kalat was the head librarian. (*Id.*).[1] On March 18, 2022, Kalat gave Plaintiff a high score on his six-month performance review, and told him he is "a good library worker . . . works hard . . . and seems to enjoy his job. (*Id.* at PageID.12, 32).

On April 18, 2022, Plaintiff went to the corner of the library to pray. (*Id.*). Kalat told Plaintiff "this is not the place for [praying]. You are here to work." (*Id.*). Plaintiff apologized and told her he "didn't think it would be a problem." (*Id.*). Following this incident, Kalat became hostile towards Plaintiff and told Fox to inform her if Plaintiff did anything wrong. (*Id.* at PageID.13).

MDOC used a "call-out" system to tell prisoners where to be throughout the day. (*Id.*). If a prisoner did not report to their call-out, they were issued a ticket. (*Id.*). Plaintiff would attend a religious service on Fridays, and Kalat scheduled his call-out at the library at the same time. (*Id.*). On April 29, 2022, Plaintiff did not report to Kalat before attending his religious call-out, thinking he could explain the situation to her later. (*Id.* at PageID.14). When Plaintiff arrived at the library after this service, Kalat issued a work performance report with a low score of 9, telling Plaintiff that he cannot come to work late and seemed like he no longer enjoyed his

---

[1] Allegations in a verified complaint have, for summary judgment purposes, the same force as those in an affidavit. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal citations omitted). Since Plaintiff filed a verified complaint, his allegations will be taken as evidence.

2

work. (ECF No. 1, PageID.14, 34). She told him she would write a ticket if he came late again. (*Id.* at PageID.14).

Plaintiff filed grievance JCS-22-05-0446-28b after this incident, saying he "attempted to speak with . . . Kalat . . . [to] persuade her to be more honest and accurate in her review of my work performance. She resisted my efforts." (*Id.* at PageID.14, 35). He also said she spent an "unprofessional amount of alone time with . . . Fox . . . [and] Fox has been filling Ms. Kalat head [sic] with negative information." (*Id.* at PageID.35). He also claimed her performance report had nothing to do with his work performance but was about her personal dislike of him. (*Id.* at PageID.36-39). This grievance was denied as vague. (*Id.* at PageID.40). He appealed it to Step II, which was also denied. (*Id.*).

On that same day, Plaintiff arrived at his second shift to find Fox and Kalat together. (*Id.* at PageID.15). Kalat "started hurling accusations" at him and told him he left the previous day's schedule in the wrong spot. (*Id.*). Plaintiff told her he "had to write the grievance. Because of [her] unprofessional relationship with Fox" and her performance report. (*Id.* at PageID.16). After his shift, Plaintiff waited outside the building to speak with Kalat. (*Id.*). Kalat did not leave until much later, when she came out with Fox. (*Id.*).

The next day, May 17, 2022, Plaintiff was told he could not enter the library and that Kalat no longer wanted him. (*Id.*). Plaintiff reported this to his counselor

3

and unit officers, and asked his mother to call the warden. (*Id.*). Plaintiff then filed another grievance, JCS 22-05-0495-28b, saying Kalat was retaliating against him for writing his first grievance and that she was harassing him. (*Id.* at PageID.47). He appealed this grievance to Step II, at which stage it was denied. (*Id.*).

On May 27, 2022, Plaintiff reported to the library. (*Id.* at PageID.17). When Kalat did not arrive for more than ten minutes, Plaintiff asked an officer whether he could attend a religious service. (*Id.*). The officer told him he could go because he was "on the callout" and "good to go." (*Id.*). He went to the service. When Kalat arrived, she told Plaintiff he was late, though she did not write him a ticket. (*Id.*).

On May 31, 2022, Plaintiff was "not wanted [at work] and probably fired." (*Id.* at PageID.17-18). On June 3, 2022, Plaintiff filed two grievances, JCS-22-06-0545-2a and JCS-22-06-0544-28i. (*Id.* at PageID.18); (ECF No. 20, PageID.131-132). In 0545, he said he was wrongfully terminated and Kalat was "distraught about [him] going to Religious Service." (ECF No. 1, PageID.51). He appealed this to Step II and Step III, and it was denied. (*Id.* at PageID.55-56). In 0544, Plaintiff said Kalat was showing favoritism, retaliating against him, and had an unprofessional relationship with Fox. (*Id.* at PageID.57). This grievance was

4

denied, and, though he appealed it to Step III, the rejection was affirmed. (*Id.* at PageID.58).

On June 7, 2022, Plaintiff went to the library to renew three books. (*Id.* at PageID.18). Kalat told him "you know the rules . . . one time check out" and denied the renewal. (*Id.*). On June 8, 2022, Plaintiff wrote another grievance, JCS-22-06-0552-03e. (*Id.* at PageID.18, 51). He appealed this grievance to Step III, though it was denied at each stage. (ECF No. 20, PageID.131).

Plaintiff brought claims of religious discrimination under the First Amendment, racial discrimination, retaliation, wrongful termination, and loss of wages. (ECF No. 1, PageID.22). He claims Kalat violated MDOC Policy directives about respecting inmates' religious beliefs, retaliated against him, engaged in adverse actions, defamed his character, violated his right to access the courts, and harassed him. (*Id.* at PageID.23).

### III. DISCUSSION

    A. <u>Analysis</u>

Defendant argues Plaintiff failed to state any claims against Kalat from the prayer interruption on April 18, 2022 and the June 7, 2022 denial of Plaintiff's request to renew books. (ECF No. 20, PageID.126). Defendant then argues Plaintiff's April 18, 2022 grievance and April 29, 2022 grievance were not fully exhausted.

5

      i.      Partial Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro.*

*Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment

7

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The

8

prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must try to resolve issues with the staff member involved within two business days of learning of a grievable issue. (ECF 20-2, PageID.155, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.157, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.158, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must

9

undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

Defendant argues Plaintiff did not exhaust his prayer interruption claim or his claim about being late to work because of a religious call out (JCS-0446). (ECF No. 20, PageID.145-146).

Plaintiff did not file a grievance about the prayer interruption. Though he told Kalat that none of his previous supervisors complained about praying at work assignments, he did not file a grievance. (ECF No. 1, PageID.12-13). He also did not discuss the issue any more with Kalat. (*Id.*). The grievance nearest this incident, JCS-0446, related to his negative work evaluation and reprimand. (ECF No. 20, PageID.146-147). Absent any grievance, Plaintiff has not exhausted his claim. *Napier v. Laurel Cty, Ky.*, 636 F.3d 218, 224-225 (6th Cir. 2011) (where Plaintiff took no steps to attempt to exhaust his administrative remedies, summary judgment was granted).

Defendant's next argument concerns JCS-0446, Plaintiff's grievance about receiving a negative work evaluation. (ECF No. 20, PageID.146-147). Plaintiff filed this claim. (*Id.*). He appealed it to Step II after an unfavorable determination, and it was once again denied. (ECF No. 1, PageID.40-41). But he did not appeal this claim to Step III, as required. *McSwain v. West*, 2021 WL 6066354, at *7 (E.D. Mich. Sept. 27, 2021) (Plaintiff failed to raise a material question of fact

when he did not show that he "pursued any [claims] through Step III of the grievance process).

Plaintiff argues that because he exhausted some of his grievances and filed a "mixed" petition, he should be allowed to present his unexhausted claims. (ECF No. 23, PageID.198). In making this argument, Plaintiff relies on inapplicable habeas law. (*Id.*). Under the correct law, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 219-220. It is well established "that no unexhausted claims may be considered." *Id.*

Defendant's motion for summary judgment should be granted on both claims.

> ii. Failure to State a Claim

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than

11

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). That said, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also Evans v. Mercedes Benz Fin. Servs.*, LLC, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro*

12

*se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

As a preliminary matter, Plaintiff says Defendant cannot file a motion to dismiss for failure to state a claim because the issue "was apparently overcome during the initial screening by the PLRA." (ECF No. 23, PageID.195). Yet this is not the case. The Court may dismiss a claim at any stage of litigation. Defendant's claims will be considered.

First, Defendant argues Plaintiff did not establish that Kalat violated his right to free exercise when she interrupted his prayer on April 18, 2022. She then claims he did not establish how denying him from renewing his books prejudiced him. Finally, she claims his argument is made under respondeat superior, because of which he has not established individual liability as necessary under 42 U.S.C. § 1983.

Defendant's respondeat superior argument misses the mark. It appears as though Defendant reads the complaint as asserting a claim against Kalat as supervisor over someone who violated Plaintiff's rights. This is incorrect. Plaintiff's claims are directly against Kalat. He says "Defendant KCS Head Librarian M. Kalat violated [his] . . . Right to Religious activity," and "violated [his] . . . right to access the courts." (ECF No. 1, PageID.4). Fox is not mentioned in these claims. Though it is necessary for an official to have "at least implicitly

13

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" in order to be found liable under respondeat superior (ECF No. 20, PageID.136), Plaintiff is not making that argument because his arguments are directly about Kalat, not Fox.

But Defendant correctly argues that Plaintiff has not established how not renewing his books prejudiced him or hindered his access to the courts. Though "[s]tates have affirmative obligations to ensure prisoners . . . meaningful access to the courts," it is not enough "for the plaintiff to simply allege that an adequate law library . . . was not made available to him." *Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)). Instead, a plaintiff must "show that the defendants' conduct in some way prejudiced the filing or prosecution of a legal matter." *Id*. Plaintiff has not done so. He only states he was unable to renew his library books. (ECF No. 1, PageID.18, 63, 64). Though the books were at a law library, he does not show that the denial harmed a legal matter. This is not enough to show Defendant violated his right to access the courts. The motion to dismiss on his access to the courts claim should be granted.

Finally, Defendant argues Plaintiff has not established that Kalat violated his First Amendment rights in interrupting his prayer. This is true. As established by many courts, prisoners have no right to pray during their work assignments. *Board*

14

*v. Weston, et al.*, 2019 WL 3955678, at *7 (W.D. Mich. Aug. 22, 2019) (Muslim prisoners may not leave work to attend prayers); *Williams v. Sec'y Penn. Dept. of Corr.*, 450 F. App'x 191, 194-95 (3d Cir. 2011) (motion for summary judgment granted in favor of prison when prisoner claimed violation of his First Amendment rights when he was prohibited from praying during his shift); *Jihad v. Fabian*, 680 F. Supp. 2d 1021 (D. Minn. 2010 (religious rights of Muslim prisoners were not violated when they could not leave their cell for prayer); *Jackson v. Maemisch*, 726 F. Supp. 2d 991, 1000-03 (W.D. Wis. 2010) (neither the Free Exercise Clause nor the RLUIPA require changes to the work schedule to allow prisoners to pray).

Despite this, Plaintiff's claim about praying at work was not exhausted, as found above. For these reasons, the claim should be dismissed, and the motion for partial summary judgment should be granted.

Beyond Plaintiff's access to the courts and free exercise claims, which should be dismissed, he also alleged racial discrimination, defamation of character, wrongful termination, loss of wages, and harassment in the "injuries" section of his complaint. (ECF No. 1, PageID.22). Defendant did not move to dismiss these other claims, likely because there are no factual allegations supporting them. To the extent that Plaintiff meant to bring the claims of racial discrimination, defamation of character, wrongful termination, loss of wages, and harassment, the lack of factual development requires dismissal.

15

## IV.     RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss and for partial summary judgment (ECF No. 20) be **GRANTED** and the case be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 30, 2024                s/Curtis Ivy, Jr.
                                    Curtis Ivy, Jr.
                                    United States Magistrate Judge


# CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 30, 2024.

                                    s/Sara Krause
                                    Case Manager
                                    (810) 341-7850